# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> MELVIN RUSSELL "RUSTY" SHIELDS, MICHAEL SIMS and SAM STAFFORD, <br><br> Defendants. | No. CR12-00410 <br><br> ORDER ON SIMS' MOTION FOR RELEASE PENDING APPEAL <br><br> [Docket No. 415] |

Defendant Michael Sims has moved "ex parte" for release pending appeal. The government has filed an opposition. Although the defendant's application was not filed with proper notice, the court has nevertheless considered the merits of the motion. The court hereby denies the motion.

**I. BACKGROUND**

On November 17, 2014, Sims was sentenced to thirty months in prison, to be followed by a three year term of supervised release. (Dckt. # 341). He was originally ordered to self-surrender by January 13, 2015 but was subsequently granted an extension to February 18, 2015. (Dckt. ## 340, 363). Sims' extension request was purportedly stipulated to by the government but the government asserts otherwise. In any event, Sims, pursuant to Criminal Local Rule 47-3, now moves the court on an ex parte basis for an order permitting him to remain released on his present bond pending the disposition of the appeal of

his conviction currently before the United States Court of Appeal for the Ninth Circuit. (Dckt. # 415). Defendant has not referenced "a citation to the rule or order which permits use of an *ex parte* motion to obtain the relief sought" as required by Criminal Local Rule 47-3(b)(1). The court nevertheless has considered the motion on its merits. *See* Criminal Local Rule 47-3(c).

## II. ANALYSIS

### A. Requirements for Release on Appeal Following Conviction

Since Sims has been convicted and sentenced, the court is required to order him detained despite the fact that he has filed an appeal, unless he can demonstrate: (1) by clear and convincing evidence that he, if released, is "not likely to flee or pose a danger to the safety of any other person or the community" (18 U.S.C. §3143(b)(1)(A)); and (2) that "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in: (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B). The court examines each of the two requirements for release.

### B. Not Likely to Flee

The government contends that Sims has not borne his burden of showing by clear and convincing evidence that he does not present a risk of flight. It contends that Sims: (1) faces a substantial sentence; (2) has failed to acknowledge his wrongdoing and tried to justify his actions; and (3) has not put up any of his own funds to secure a release bond. However, the government overlooks a number of factors that clearly and convincingly demonstrate that Sims does not present a flight risk.

Sims is a life-long resident of California and a long-time resident of Santa Clara County. He has been married since 1978. He has two daughters, both of whom reside locally with their respective husbands. He has five grandchildren, ranging in age from six months to nine years. Sims has no history of criminal convictions or arrests. Pretrial Services at the commencement of the case concluded that Sims has strong familial ties to this area and poses a "minimal flight risk" and recommended that he be released on supervised release during the course of the proceedings. He was released and has met all of his conditions and made all of his court appearances.

Except for his involvement with S3, Sims' appears to have had a history of legitimate and successful employment.

Sims also has significant health issues for which he has been treated and monitored by local doctors including specialists. It seems highly unlikely that he would flee the location where he receives this medical care.

Despite the government's speculative concerns, the evidence clearly and convincingly establishes that Sims is not a flight risk.

### C. Danger to any Other Person or the Community

The government does not claim that Sims presents a physical risk of harm to others but does assert that he has not proven by clear and convincing evidence that he will not commit fraud in the future. The government cites *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992), which held that a danger to the community that will justify denial of request for bail pending appeal may, in some cases, encompass pecuniary or economic harm. *Reynolds* provides little guidance as to what constitutes pecuniary or economic danger. However, the case on which it relies, *United States v. Provenzano*, 695 F.2d 85 (3rd Cir. 1979), does discuss what about Provenzano constituted an economic risk. Provenzano had three federal felony convictions, all dealing with some form of labor extortion or racketeering. Moreover, on the basis of the Union's largess toward Provenzano during previous incarcerations and the continued control exercised by Provenzano's family over the Union, the court denied release on the concern that if released Provenzano would have additional opportunity to exercise a substantial and corrupting influence within the Union. 695 F.2d at 96.

A showing of potential economic harm as significant as in *Provenzano* is clearly not required to deny bail on appeal. The burden of showing the lack of risk, of course, is on the defendant. Here, Sims' employment history in the area for a number of years, the apparent lack of any indication that he is engaging in a fraudulent activity or is involved in any business which would facilitate the commission of fraud, his early disassociation from S3, and the same facts which support that Sims is not a flight risk all suggest that Sims does not present a danger to another person or the community. The court is satisfied that the evidence is clear and convincing that Sims does not present a danger.

### D. Substantial Question of Law or Fact Likely to Result in Reversal

In order to obtain bail pending appeal, Sims must demonstrate that his appeal raises a substantial issue of law or fact that is likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b); *United States v. Wheeler*, 795 F.2d 839, 840 (9th Cir. 1986). Two distinct questions must be answered: (1) whether the appellate issues raised by the defendant are "substantial" and (2) whether those issues are "likely to result in reversal." *United States v. Handy*, 761 F.2d 1279, 1280-81 (9th Cir. 1985). "[T]he word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." *Id.* A "substantial question" is one that is "fairly debatable," and "[l]ikely to result" in reversal means that "if the substantial question is determined favorably to the defendant on appeal, that decision is likely to result in reversal or an order for a new trial." *Id.* The burden is on the defendant to overcome the presumption that he should be detained while his appeal is pending. *See United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990).

### 1. Sufficiency of the Evidence for Count 8 - Wire Fraud Related to the Kaanapus S3 Investment

Sims raises two appellate issues in his motion for release on appeal that he asserts are substantial, i.e. ones that are "fairly debatable": (1) lack of evidence to support his conviction and (2) the jury verdict was so inconsistent as to lead to a miscarriage of justice. He failed to make a motion for acquittal pursuant to Fed.R.Crim. P. 29 at the close of the government's case, at the close of all the evidence or following his conviction on Counts 8 (Kaanapus' Alafia Village investment) and 12 (Kaanapus' Stagecoach investment). Therefore, he must show plain error in order to prevail on appeal. *United States v. Flyer,* 633 F.39 911, 917 (9th Cir. 2011). However, when the claim is insufficiency of the evidence, it is difficult to conceive of a different result occurring from the application of plain-error review and the application of the standard test for insufficiency of the evidence. *Id.*

> When a sufficiency-of-the-evidence claim is not properly preserved, we apply plain-error review. *See United States v. Cruz*, 554 F.3d 840, 844 (9th Cir. 2009). "Under plain-error review, reversal is permitted only when there is (1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 845 (quotation omitted). However, plain-error review of a sufficiency-of-the-evidence claim is only "theoretically more stringent" than the standard for a preserved claim. *Id.* at 844; *see*

Order on Sims' Motion for Release Pending Appeal
Dckt. #-12-00410                           4

*also United States v. Garcia–Guizar*, 160 F.3d 511, 517 (9th Cir. 1998) (noting that even under plain-error review, a court should not "affirm a conviction ... if the record clearly showed that the evidence was insufficient").

*Id.* In addition, if a plaintiff shows a substantial question of whether the evidence was sufficient to support a conviction, it follows that the last two elements of the plain error test are met. "When a conviction is predicated on insufficient evidence, the last two prongs of the [plain error] test will necessarily be satisfied: A defendant's "substantial rights," as well as the "fairness" and "integrity" of the courts, are seriously affected when someone is sent to jail for a crime that, as a matter of law, he did not commit. . . ." *Cruz*, 554 F.3d at 845.

The government's assertion that the evidence of Sims' guilt was overwhelming is an exaggeration of the strength of its case. However, the appellate issue that Sims asserts in his motion is whether there is a "fairly debatable" question with regard to the sufficiency of the evidence. The standard for review of a claim of insufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).[1]

The jury found Sims (and Shields) guilty of Count 8 of wire fraud involving the Kaanapus' $239,494.38 investment in the S3 Alafia Village Project. In approximately June 2007, the S3 Partners began the real estate development project known as the Alafia Village Project. The S3 Alafia Village Project was to have been a development located near Tampa, Florida, serving seniors. The jury could have found based upon the evidence that Sims, at the time that the Kaanapus invested on November 21, 2007, had knowingly overstated (or knew S3 personnel such as Allen Hu and Doug Burke were overstating) to the Kaanapus, clients of Golden Crest, the safety of the investment and stage of the project. The Kaanapus' investment funds were supposed to go only to the Alafia Village Project and Sims knew a portion of them would be diverted to other uses. The jury could have rationally found that by the October-November 2007 time frame Sims knew of financial issues threatening various S3 projects and friction was mounting between him and Shields. He did not

---

[1] Since the appellate issue is insufficiency of the evidence, the court is applying the same standard that would be applied if Sims had preserved the issue with a Rule 29 motion.

disclose, or cause the information to be disclosed, to the Kaanapus. The financial evidence at trial showed that much of the Kaanapus' S3 Alafia investment did not go to the S3 Alafia Project. Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of Count 8 beyond a reasonable doubt.

### 2. Sufficiency of the Evidence for Count 12 - Kaanapus' Stagecoach Investment

The jury found Sims guilty on Count 12 related to the Kaanapus' $178,000 investment in the S3 Stagecoach Project. On December 20, 2007 the Kaanapus invested $178,000 of their retirement funds with S3 Partners for the Stagecoach project. Sims arranged for the Kaanapus to have these funds wired directly to an account he controlled, then spent their funds, in large part, to take care of unpaid Golden Crest expenses and other personal expenses for his benefit without their knowledge or permission.

Sims admitted at trial that he failed to disclose to the Kaanapus before their S3 Stagecoach investment that he was having problems getting funds and financial records from Shields related to S3. The financial analysis presented at trial and trial testimony demonstrated that Sims personally diverted all of the Kaanapus $178,000 to a WAMU Golden Crest account he controlled. Sims acknowledged at trial that "none of the Kaanapus' money went to the S3 Stagecoach Project" and that it instead went to where he spent it.

> AUSA FAZIOLI: But you arranged that their money, the Kaanapus' $178,000, would be wired directly to your WAMU account; correct?
>
> SIMS: Yes.
>
> AUSA FAZIOLI: And you knew ahead of time before they wired that money that you were going to spend that money in that WAMU account, correct?
>
> SIMS: Yes.

Sims 12/18/13 Trial Transcript Dckt. # 419 at 3467:2-8. Sims also admitted that at no point before the Kaanapus wired their money did he communicate to them that he was going to use the money other than for the Stagecoach project. Sims diverted the Kaanapus' $178,000 despite the fact that (as he admitted at trial) he was aware that the Kaanapus' $178,000 investment was coming from their individual retirement account. Sims admitted at trial that he used the Kaanapus' money to make an

interest payment to his daughter. Given the standard of review, the court does not believe that Sims has a "fairly debatable issue" of insufficiency of the evidence to support his conviction on Count 12.

### E. Inconsistency in Jury's Verdict

Sims contends that the verdict was so inconsistent that it leads to a miscarriage of justice. He points out that he was acquitted of thirty-seven of the thirty-nine counts on which he was tried. The evidence pertaining to many of the thirty-seven counts on which he was found not guilty, he asserts, was essentially the same as the evidence on the two counts on which he was found guilty. Sims, in essence, claims that the counts on which he was acquitted suggest that he was not guilty of fraud with respect to the Kaanapus' investments in the Alafia and the Stagecoach projects. However, "[i]nconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support the guilty verdict." *United States v. Brandon*, 633 F.2d 773, 779 (9th Cir. 1980); *see Dunn v. United States*, 284 U.S. 390, 393 (1932). As noted above, a rational juror could have found Sims guilty of Counts 8 and 12, if the evidence is viewed in the light most favorable to the government.

## III. ORDER

The showing made in Sims' motion for release pending appeal does not persuade the court that Sims presents a "fairly debatable" issue with respect to the sufficiency of the evidence or the alleged inconsistency in the verdict. Therefore, his motion for release is denied.

Dated: February 24, 2015

RONALD M. WHYTE
United States District Judge